233 So.2d 514

**STATE of Alabama**

**v.**

**Charles F. ACKER d/b/a Acker Cabinet Shop.**

**7 Div. 4.**

Court of Civil Appeals of Alabama.

March 25, 1970.

MacDonald Gallion, Atty. Gen., Willard W. Livingston, Asst. Atty. Gen. and Counsel, Dept. of Revenue; Herbert I. Burson, Jr., Asst. Atty. Gen., and Asst. Counsel, Dept. of Revenue, for the State.

Merrill, Merrill, Vardaman & Williams, Anniston, for appellee.

WRIGHT, Judge.

Appellant, State of Alabama, Department of Revenue, brings this appeal from a decree of the Circuit Court, In Equity, of Calhoun County, Alabama, which decree set aside a final assessment for sales tax entered by the Department of Revenue against appellee, Charles F. Acker.

The final assessment against appellee was made on April 12, 1966 in the amount of $2,173.91, and covered an audit period from April 1, 1962 through May 31, 1965. Appeal from the assessment was brought by Mr. Acker in the court below under Section 140, Title 51, Code of Alabama 1940. The matter was heard ore tenus by the trial court with final decree entered on January 23, 1969, which decree set aside the assessment. From the adverse decree, the appellant, State of Alabama, brings this appeal.

There is little, if any, dispute as to the factual situation out of which this case arose. The appellee, Charles F. Acker, is engaged in business in the City of Anniston. His method of operation is as a contractor or subcontractor, for the construction and installation of kitchen cabinets in houses. The cabinets he constructs and installs are known in the trade as "custom built" cabinets. His work begins with measurements and specifications taken from plans or blueprints, or personally made at the site of construction, with additional instructions either from the contractor or the owner. With the measurements, instructions, and specifications, he begins construction or fabrication in his shop. When the shop work is completed, the product is carried to the house, fitted therein and installation completed.

The evidence indicates that the larger part of construction is completed in the shop and, usually, work at the job site consists of fitting, leveling, forming and attaching the top, gluing thereon formica and any other work necessary for a finished product. Painting is usually done by the general contractor. If, when brought to the job site for completed installation, measurements and specifications are wrong and the cabinets do not fit into the proper space, the shop product is useless and work must be begun again. In such a case, the shop product has little or no value, unless a customer comes by who can use cabinets of these particular measurements and specifications. Appellee does not construct in his shop any standard size cabinets for sale to the general public.

It had been the practice of appellee to pay sales tax as provided in Title 51, Section 786(2) (j), Code of Alabama 1940. He contends that he is a contractor using building materials in the performance of a construction contract, which building materials are taxable at their cost to him as purchased from a wholesale dealer. It is the contention of appellant, State of Alabama, that appellee is a manufacturer-contractor within the meaning of Title 51, Section 786 (2) (m), Code of Alabama 1940, as such section is interpreted by Department Ruling B27–081. There is included in the assessment against appellee a small sum allegedly due the City of Anniston, imposed by a special act of the legislature, and a city

ordinance, as a city sales tax. The levy is the same as that upon which the state sales tax is based, and a finding as to the propriety of the state levy will be determinative of the assessment under the city ordinance.

Appellant has made ten assignments of error, which collectively, attack the final decree of the court below in its entirety. For the purpose of this opinion, we consider it unnecessary to discuss each assignment of error separately. As we see it, the question presented by this appeal is whether appellee is a contractor using building materials in the performance of a construction contract, which materials are taxable to appellee at the cost price to him under Title 51, Section 786(2) (j), or whether he is a manufacturer-contractor within the provisions of Title 51, Section 786(2) (m), as said section is interpreted by Ruling B27–081, and is due to pay sales tax on a manufactured product as though making a retail sale, the amount of such tax to be measured by the reasonable and fair market value of the product at the time and place where used. Appellee contends he falls within the first category. Appellant contends that appellee falls within the second.

We shall first examine the appropriate provisions of Title 51, Section 786(2) (m), together with its departmental interpretation, Ruling B27–081. Section 786(2) (m) reads in part as follows:

"The following words, terms and phrases when used in this article shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning: * * *.

"(m) The use within this state of tangible personal property by the manufacturer or compounder thereof, as building materials, in the performance of a construction contract, shall, for the purposes of this article be considered as a retail sale thereof by such manufacturer, or compounder who shall also be construed as the ultimate consumer of such materials or property, and who shall be required to report such transaction and pay the sales tax thereon, based upon the reasonable and fair market price thereof at the time and place where same are used or consumed by him or it. * * *"

The departmental interpretation of the above quoted section, known as B27–081, is quoted in pertinent parts as follows:

"Section 1 (m) provides that the use of building materials in the performance of a contract by the person who manufactures them is equivalent to making a retail sale, such materials and such use must be reported by such person as subject to sales tax to be measured by the reasonable and fair market value at the time and place where used.

"Where the contractor-manufacturer also sells the same kinds of materials to others for installation by them, the 'reasonable and fair market value' would be the same as the 'sales price' * * *

"Where no 'sales price' can be found to be used as the measure of the tax, the following formula should be used:

"Manufactured cost of materials, plus transportation to job site, plus proportionate part of general overhead, selling cost, and profit equals reasonable and fair market value of materials.

"Section 1 (m) applies to metal awnings, metal carports, and other similar permanently attached additions to buildings when the components are prefabricated at the shop, plant, or mill of the contractor. This subsection does not apply when the materials are cut and fitted on the job site for attachment as construction progresses * * * examples of materials which do come within the provisions of this subsection are: doors, window sashes, ready mix concrete, and cabinets manufactured by the contractor in a plant, shop, or mill operated for the purpose of such manufacturing * * *"

Appellant approaches argument in brief by stating that one of the most pertinent words in the statute is that of "manufacturer". Appellant quotes extensively from 26 Words and Phrases, "Manufacture", pages 610 et seq., such quotations representing definitions of the word "manufacturer" as found in various cases. Appellant presents an anomaly when it states: "the plethora of decisions makes it *simple* to determine what 'manufacturer' means legally." (Emphasis ours.) We cannot agree that vast numbers of interpretations involving varied factual situations, makes simple a determination of what a word legally means.

In the case of State v. Air Conditioning Engineers, Inc., 277 Ala. 675, 174 So.2d 315, the Court was apparently presented with the same "plethora" of definitions of the word "manufacturer" as we have received here. In response, the Court stated "The term, 'manufacturer' in its broadest sense implies any change wrought by hand. Such a broad implication serves no useful purpose in a solution of the present question. In taxation statutes the word 'manufacturer' is generally given a narrow meaning. Armature Exchange v. United States, D.C., 28 F.Supp. 10, and several of the definitions of 'manufacturer' assert that the transformation into a new form must be such as the new article has a 'distinctive name, character or use' (Citation omitted) 'or into a suitable form for use.' (Cullum v. Stevens, D.C., 46 F.Supp. 73)."

We are in full accord with the further statement of the Court in State v. Air Conditioning Engineers, Inc., supra, when it stated "the application of taxing statutes must be bottomed upon, and considered in the light of each particular situation, bearing in mind that in case of doubt a tax law should be liberally construed in favor of the taxpayer. Montgomery Aviation Corp. v. State, 275 Ala. 266, 154 So.2d 24."

In looking at the factual situation at hand, it comes to mind that improved construction methods within recent years is responsible for complicating the application of the tax statute to appellee's operation. Just a few years ago appellee in the performance of his contract would have brought his materials and tools to the construction site. There he would have measured, hammered, sawed and fitted until he had built the cabinets into the house. New materials, tools and skills now make possible appellee's method, in that a large part of the work is done at a shop, leaving only leveling, fitting and finishing to be performed at the job site. We do not believe it would be seriously contended by the state, that the old method described would be one of manufacture. It is well known, that modern methods of home construction are tending more and more toward almost total prefabrication, according to desired plans and specifications in a central factory or shop of all the component parts of a house, leaving only the assembly and finishing to be completed at the job site. Such an operation appears to us to be comparable to the situation at hand.

Appellee contends that he is a contractor under Title 51, Section 786(2) (j). That section provides in part, as follows:

> "*Sales of building materials to contractors, builders, or landowners for resale or use in the form of real estate are retail sales in whatever quantity sold.* * * * The term 'sale at retail' or 'retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale, except property which has been previously withdrawn from the business or stock and used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same; and such whole-

sale purchaser shall report and pay the taxes thereon. * * * "

It is within the italicized portion of the above statute that appellee contends his operation falls.

The same question as to the proper applications of Sections 786(2) (m) and 786 (2) (j) of Title 51, was before the Court in the case of State v. Air Conditioning Engineers, Inc., supra. The taxpayer in that case was contended by the state to be a manufacturer within the meaning of Section 786(2) (m). The taxpayer was a subcontractor for the installation of air conditioning duct systems, and as such was charged with the responsibility of making a complete installation of a duct system in a particular building. Drawings and specifications were provided from which parts of the system were formed and fabricated in the shop of the taxpayer. The entire system could not be assembled in the shop because of space problems there and in transporting to the job site. The preformed portions of the duct system arrived on the job in various size pieces and were assembled there into the complete system. Often the pieces fit without problems, and at times they did not, and would have to be reshaped and trimmed. Often those parts which did not fit had to be thrown away as junk. The portions produced in the shop were not finished products and had little if any retail sales value because they were designed and constructed in accordance with specifications to fit a particular building.

The decision of the Supreme Court was against the contention of the state that the taxpayer was a manufacturer-contractor within the meaning of Section 786(2) (m), and was therefore due to pay sales taxes upon the reasonable and fair market value of the air conditioning duct system. The Court found that the taxpayer was not manufacturing a finished product saleable on the market and having any market value.

It is further to be noted that Rule B27-081 was quoted by the Court in State v. Air Conditioning Engineers, Inc., supra, largely as we have quoted it here. There was further quoted a departmental rule on building materials, implementing Section 786(2) (j). After quoting these rules the Court stated the following:

"It is clear under these rules that one manufacturing a standard finished product, and who as a contractor installs such finished product is liable for a sales tax on the value of the completed and finished product. The examples set forth in the rule of metal awnings, car ports, etc., which are completely finished and standard items, represent the ideas of the Revenue Department, and distinguish such products completely from items only partially fabricated, and entirely unusable until integrated into a completed whole, and usable product, in this case a completed air duct system."

We consider the above quoted statement, as to the meaning of the rules of the department of revenue interpreting Sections 786 (2) (m) and 786(2) (j), is dispositive of their application to the factual situation in this case. We have involved here a slightly more nearly completed product, but clearly not a "standard finished product." The holding in State v. Try-Me Bottling Co., 257 Ala. 128, 57 So.2d 537, is further authority in accord with State v. Air Conditioning Engineers, Inc., supra.

We are not overly impressed with the argument of the state that since the department rule has been in effect and unchallenged for many years that it should withstand attack in every factual situation. We know of no interpretation or construction of a taxing statute that is so clear and indisputable as to be unassailable in every instance of attempted application. Such strictness does not even apply to construction by the ultimate authority—the appellate courts.

We have given the rule and its unchallenged longevity proper weight in our con-

siberation of this case, but do not feel compelled to bow to its omniscience. We believe the intent of the legislature as to the application of the statute is sufficiently unclear as to apply the general rule of interpreting a taxing statute in favor of the taxpayer. State v. Lane Bryant, Inc., 277 Ala. 385, 171 So.2d 91.

Appellant has cited as authority for its position State v. Kershaw Mfg. Co., 273 Ala. 215, 137 So.2d 740. We do not consider it to be authority when applied to the facts in this case. The *Kershaw* case involved a complete manufactured machine and did not turn on the question of whether it was a manufactured item, but rather, whether it involved a manufactured item, withdrawn from inventory and used or consumed by the manufacturer. The same comment is due the cited cases of State v. T. R. Miller Mill Co., 272 Ala. 135, 130 So.2d 185, and Lone Star Cement Corp., et al. v. State Tax Commission, et al., 234 Ala. 465, 175 So. 399.

The evidence here is clear that appellee has partially fabricated, constructed or assembled in his shop an item, or items, useful only when integrated into a completed cabinet system in a specific kitchen and in a specific house. Until completely integrated and affixed to the realty it has no reasonable market value in any other condition.

We do not believe that our finding in this case will adversely affect that part of department rule B27–081 which states that "cabinets manufactured by the contractor in a plant, shop, or mill operated for the purpose of such manufacturing" are within the provisions of Section 786(2) (m). The reason being, that the word "cabinets" as used in the rule should apply to a standard finished product, which has a reasonable market value at the place of manufacture and not to a custom built cabinet, usable only at a specific place and when completed and integrated there.

We therefore find ourselves in agreement with the decree of the lower court that appellee is not a manufacturer-contractor within the meaning of Title 51, Section 786(2) (m), Code of Alabama 1940, as amended. The decree of the lower court is hereby affirmed.

Affirmed.